**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **JANE DOE and JANE ROE, on behalf of themselves and all similarly situated employees and a class of employees,**<br><br>　　　**Plaintiffs,**<br><br>**v.**<br><br>**ALLIED FACILITY CARE, LLC,**<br><br>　　　**Defendant.** | **No. _____**<br><br><br><br>**JURY DEMAND**<br><br>**CLASS ACTION**<br><br>**COLLECTIVE ACTION** |

## CLASS AND COLLECTIVE ACTION COMPLAINT

For their Collective Action Complaint under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–19, and their Class Action Complaint under Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981; the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101 to 4-21-408; and the common law of Tennessee against Defendant Allied Facility Care, LLC ("Allied" or "Defendant"), Plaintiffs Jane Doe and Jane Roe (collectively, "Named Plaintiffs") state as follows:

### PRELIMINARY STATEMENT

This case involves the egregious exploitation of foreign-born, Hispanic women, including sexual exploitation by an Allied supervisor—a known sexual predator—that Allied hired and retained despite the fact that it knew, or should have known, about his criminal activity. Plaintiffs and other women reported sexual harassment to Allied, but for years Defendant failed to terminate the sexual predator or to take other remedial actions. Instead, Allied allowed the predator to retain control over Plaintiffs and other foreign-born, Hispanic women. And FedEx Ground Package

System, Inc. ("FedEx") decided to keep Allied and its sexual-predator supervisor because it would "cost too much" to change contractors.

## INTRODUCTION

1.       Named Plaintiffs seek to recover damages from Defendant under the THRA and the common law of Tennessee for the egregious and outrageous sexual assault and sexual harassment and retaliation, as well as national origin discrimination, against Hispanic female employees by their supervisor, Samuel Perez ("Perez").

2.       Named Plaintiffs also seek to recover damages under Section 1981 for race and alienage discrimination by Allied.

3.       Named Plaintiffs also file this collective action, on behalf of themselves and all other similarly situated employees, to remedy Allied's violations of the FLSA.

4.       Allied violated the FLSA by, among other things, withholding wages from Named Plaintiffs other similarly situated employees and by failing to make all wage payments to Named Plaintiffs and other similarly situated employees free and clear.

5.       This collective action seeks to recover unpaid minimum and overtime wages for Named Plaintiffs, as well as for all similarly situated current and former employees who worked for Allied during the 3 years before the filing of this Complaint ("Putative FLSA Class").

## JURISDICTION AND VENUE

6.       This Court has subject-matter jurisdiction.  Named Plaintiffs' claims either arise under federal statutes, 28 U.S.C. § 1331, or are "so related to [the federal] claims . . . that they form part of the same case or controversy under Article III of the United States Constitution," *id.* § 1367(a).

7.       This Court has personal jurisdiction over Allied; it does business in this District.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b).  A substantial part of the events giving rise to this action occurred within this District, and Allied does business in this District.

## PARTIES

9.      Jane Doe is an individual; she resides in Davidson County, Tennessee.  She attaches a redacted version of her written consent to join this action as Exhibit 1.

10.     Jane Roe is an individual; she resides in Davidson County, Tennessee.  She attaches a redacted version of her written consent to join this action as Exhibit 2.

11.     Named Plaintiffs will file a motion for a protective order, requesting that this Court allow them to proceed pseudonymously.

12.     Named Plaintiffs' privacy interests substantially outweigh the presumption of open judicial proceedings.

   a.      Specifically, prosecution of this action will require Named Plaintiffs to disclose "information of the utmost intimacy," namely descriptions of the egregious and outrageous sexual assaults and sexual harassment that Defendant permitted Perez to inflict on them.

   b.      Defendant will not be prejudiced by the non-public disclosure of Named Plaintiffs' identities, because Named Plaintiffs have already disclosed their identifies to Defendant' counsel.

13.     Allied is a Texas company registered to conduct business in Tennessee.

14.     Allied's registered agent for service of process in Tennessee is C T Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919.

15.     At all relevant times, Named Plaintiffs were employees of Allied under the FLSA.

16.     At all relevant times, the Putative FLSA Class members were employees of Allied under the FLSA.

17.     At all relevant times, Named Plaintiffs were employees of Allied under Section 1981.

18.     At all relevant times, the Named Plaintiffs were employees of Allied under the THRA.

19.     At all relevant times, Named Plaintiffs worked for Defendant on the premises of FedEx locations in Nashville, Tennessee, and Mount Juliet, Tennessee.

## FACTS

### A.     Background

20.     Since at least 2016, FedEx has contracted with Allied for performance of cleaning services at FedEx facilities.

21.     The FedEx "Nashville Facility" is located at 3301 Knight Road, Nashville, Tennessee 37207.

22.     The FedEx "Mount Juliet Facility" is located at 100 FedEx Way, Nashville, Tennessee 37122.

23.     Since at least 2016, Perez has been employed by Allied and has supervised cleaning staff assigned to work at FedEx distribution locations.

24.     Perez was accused of assault, offensive or provocative contact, on or around November 30, 2016.

25.     John Ballenger ("Ballenger"), an Allied manager located out-of-state, and Courtney (last name unkown), the FedEx supervisor in charge of maintenance at FedEx's Nashville location, were fully aware of the allegations against Perez.

26.     Perez was charged with assault, offensive or provactive contact, and appeared in court on September 14, 2017.

27.     Ballenger and Courtney testified on Perez's behalf during the prosecution that resulted from Perez's criminal charges.

28.     FedEx supervisory- and management-level employees knew or should have known of the criminal allegations against Perez.

29.     Allied supervisory- and management-level employees knew or should have known of the criminal allegations against Perez.

30.     FedEx and/or Allied supervisory-level employees attempted to collect money from employees on behalf of Perez for his legal defense and/or bail.

31.     Perez' employment and supervisory role over cleaning staff at FedEx locations continued after the 2016 criminal allegations.

32.     Perez was allowed to advertise, recruit, interview, hire, supervise, and discipline individuals employed to perform cleaning services at FedEx facilities.

33.     Perez advertised cleaning positions only to foreign-born, Hispanic women by posing as a female though a Facebook group designed only for women.

34.     Perez utilizes the fears and the reticence to report of foreign-born, Hispanic women liked Named Plaintiffs to intimidate them into remaining silent about, and to groom them to accept, his sexual assaults and sexual harassment.

35.     In the recruiting process and the early stages of his supervising each of the Named Plaintiffs, and other similarly sitiuated women, Perez began to groom them to accept his sexual advances.

36.     Perez harassed and intimidated Named Plaintiffs, and other similarly situated women by, among other things,

        a.      Vetting them to see how badly then needed the job;

        b.      Repeatedly asking them to go out with him;

        c.      Offering to reduce their workloads if they would go out with him;

        d.      Threatening to increase their workloads or to have them fired if they refused to go out with him;

        e.      Threatening to write up Named Plaintiffs if they did not go out with him;

        f.      Writing up Named Plaintiffs as punishment for not going out with him; and Holding write ups, and possible termination, over the heads of Named Plaintiffs to coerce them into sex.

37.     After Perez groomed Named Plaintiffs, and other similarly situated women, he proceeded to sexually assault them.

38.     Perez specifically advertised in Spanish for women to fill the cleaning positions at FedEx on social media.

39.     Perez falsely used the Facebook profile of a female to lure women into contacting him for employment.

40.     Perez did not advertise for men and did not advertise in English.

41.     Each of Named Plaintiffs and other similarly situated women responded to Facebook ads.

42.     Named Plaintiffs and other similarly sitiuated women were contacted and asked to appear for an in-person interview with Perez at one of the FedEx Facilities.

43.     Perez interviewed each of the Named Plaintiffs and other similarly situated women.

44.     Perez conducted these interviews without supervision from any employee or representative of Allied or FedEx.

45.     Perez conducted interviews at one of the FedEx facilities.

46.     Doe and Roe were each interviewed by Perez separately at one of the FedEx facilities.

47.     Before the interview with Perez, each Named Plaintiff, and other similarly situated women, was required to obtain FedEx credentials from FedEx employees.

48.     Each of the Named Plaintiffs, and other similarly situated women, were interviewed by Perez in the FedEx employee lounge.

49.     Perez hired each of the Named Plaintiffs and other similarly situated women.

50.     Upon hiring, each Named Plaintiff, and other similarly situated women, had her photo taken by a FedEx employee.

51.     Named Plaintiffs, and other similarly situated women, were issued FedEx badges.

52.     Perez assigned the Named Plaintiffs, and other similarly situated women, exclusively to FedEx facilities.

53.     There was no designated Allied office location within the FedEx facilitiy.

54.     Perez scheduled the Named Plaintiffs, and other similarly situated women, to work at the FedEx facilities.

55.     Named Plaintiffs, and other similarly situated women, reported to work at their assigned FedEx facility.

56.     Perez told Named Plaintiffs, and other similarly situated women, that women who tried to complain to FedEx supervisor Courtney were punished with increased work or termination.

**B.    Jane Doe**

57.    Doe was hired on or around October 14, 2019.

58.    Doe worked at the FedEx Mount Juliet facility between October 2019 through approximately April 2020 and then the Nashville facility from May 2020 through August 2020.

59.    Doe's pay information was only accessible through ADP, under work information she is listed a "Regular-FedEx GND Mount Juliet."

60.    During the interview, Perez asked Doe questions unrelated to the work and of a personal nature, including:

      a.    asking why she was working if she was married;

      b.    telling her his wife had cheated on him and he was only with her because of his daughters;

      c.    asking her if she loved her husband;

      d.    warning her that he did not want gossipers; and

      e.    warning her that he would write her up if she talked with others.

61.    Perez told Doe to report to FedEx's Mount Juliet location.

62.    Doe received no pay for her first week of work.

63.    Doe was not given a choice in how she would be paid but was forced to accept payment in the form of Global Cash Card, which is issued by ADP.

64.    Rosa Medina ("Medina") was the highest level Allied employee at the Mount Juliet Facility.

65.    Perez told Doe that he, not Medina, was the person who approved leave requests.

66.    Perez told Doe whenever she needed time off or was running late that she must speak to him, not Medina.

8

67. Perez told Doe that Medina wanted to write up Doe and had complained to Perez that he was not writing up Doe.

68. Perez then issued Doe two write ups in front of Medina.

69. Perez later told Doe that he issued the disciplines to keep Medina from causing more trouble but that he would not turn the write ups in as long as she obeyed his instructions.

70. Perez told Doe that he was the one who gave the orders, that he was the one in control, and that Doe had to do as he told her if she wanted to keep her job.

71. Perez instructed Doe to get into his SUV and he told her, "I'm going to give you the rules of the company. This is how it is for you. I liked you from the moment you filled out the application. If you accept my conditions, then you will always have this job, but if you don't you can go, it doesn't matter. If you want permanent status, then you are going to have sex with me whenever I want it."

72. Perez told Doe that he had complete control over whether she received the $12.50 per hour rate that he promised during the interview process or a lower rate of $10.00 per hour.

73. Doe began to cry and Perez said, "I have told you the arrangement. . . . You have no one to tell. You are an immigrant."

74. Perez then put his hands on Doe's breasts, rubbing back and forth, and grabbed her legs.

75. Perez later repeatedly took Doe to isolated areas in FedEx buildings to fondle her.

76. Perez ordered Doe to tell her co-workers that she was being re-assigned to work at another FedEx facility, but instead Perez required Doe to go to a nearby hotel where he raped her.

77. During work hours, Perez pulled Doe from job assignments.

78.     Perez took Doe to area hotels at least four occasions and forced Doe to perform sexual acts during work hours and against her will.

79.     Doe went FedEx Maintenance Manager Jose Yanting ("Yanting") to report the false discipline and sexual harassment.

80.     Perez terminated Doe's employment the first time she refused to comply with his sexual demands.

81.     Needing money to support her family in the midst of the pandemic, and having not received her last check, Doe contacted Perez for the contact information of the HR person so she could get paid money that Defendant owed her for work that she performed for Defendant.

82.     Perez refused to provide the number but offered her and Roe their jobs back.

83.     Doe returned to work and again was not paid for her first week.

84.     Doe's pay information was only accessible through ADP, under work information she is listed a "Regular-FedEx GND Nashville."

85.     According to ADP records, $60.00 was deducted for uniform shirts.

86.     Doe was reassigned to the Mount Juliet location after a month.

87.     Perez told another male Allied employee that if he liked Doe, he could have sex with her, adding, "She's really good."

88.     Perez also offered sex with other foreign-born, Hispanic women to additional male Allied and FedEx employees.

89.     On or around June 7, 2020, Perez obtained the key to the drivers' shower room at the Nashville Facility.

90.     A FedEx employee provided Perez with the key to the drivers' shower room on or around June 7, 2020.

91.     Perez raped Doe in the FedEx drivers' shower room at the Nashville Facility.

92.     Doe asked Yanting to whom could report Perez's assault and harassment.

93.     Doe went with Roe to Yanting to report Perez.

94.     During a conversation with Yanting, Doe and Roe reported that many of the women had experienced abuse at the hands of Perez.

95.     Doe also told Ballenger that Perez was an abuser, discriminator, and exploiter.

96.     Yanting called Allied managers Tim Davis and Ballenger and told them, "I don't want [Perez] here. . . . This isn't the first time."

97.     Yanting told Doe and Roe that he had been trying to get rid of Allied but could not because of a contract and because it would be too expensive for FedEx to get rid of Allied.

98.     On or about June 9, 2020, Doe reported to Ballenger that Perez raped her.

99.     Perez was not fired.

100.    Perez was temporarily reassigned to the Nashville Facility.

101.    Perez's repeated rape of Doe caused her severe emotional distress.

102.    Doe has sought medical treatment for her severe emotional distress.

C.      **Jane Roe**

103.    Perez hired Jane Roe in or around October 2019 to work at the FedEx Mount Juliet facility.

104.    Roe rode to work with Doe.

105.    Perez told Roe to come to his car on FedEx's premises and repeatedly asked Poe to go out with him.

106.    Perez repeatedly cornered Roe at the FedEx facility and sexual assaulted her.

107.    Perez coerced Roe to enter his vehicle on FexEx property during her scheduled work time where Perez inappropriately touched Roe for his sexual gratification, including by touching her vagina.

108.    Although Roe refused and rejected Perez's propositions, Perez did not stop his advances.

109.    Perez repeatedly propositioned Roe, including offering her money in exchange for sex or for giving him massages

110.    After refusing to go to a hotel with Perez, Roe was assigned double duty and given more physically demanding and less desirable jobs, including heavy trash removal and toilet cleaning.

111.    After Roe refused to have sex with Perez and refused to give him massages, he retaliated against her by increasing her workload and assigning her to more difficult tasks.

112.    In April 2020, Perez intentionally walked in on Roe in the shower while she was working and sexually assault her by groping her private areas.

113.    Perez targets foreign-born, Hispanic women who are similarly situated to Named Plaintiffs because he believes they are more vulnerable and more easily exploitable than workers born in the United States and workers who are not Hispanic and that they will tolerate his egregious and outrageous sexual assault, harassment, and rape without reporting it to their employers or to the authorities.

114.    Defendant did not investigate the allegations of sexual assault, rape, and attempted rape from the Named Plaintiffs and other similarly situated women.

115. Defendant did not ensure that the work environment or the FedEx facilities of the Named Plaintiffs and other similarly situated women was safe and free from sexual assault or rape, despite knowing that Perez was a sexual predator who targeted foreign-born, Hispanic women.

116. Defendant knew or should have known that Perez was a sexual predator who targeted the Named Plaintiffs and other similarly situated foreign-born, Hispanic women for sexual assault and rape.

117. Defendant were negligent in hiring, retaining, and supervising Perez and Perez's supervisors.

118. Defendant were negligent in their failing to provide adequate security for their workers and/or contractors at the various FedEx properties.

119. Defendant were negligent in their failing to adequately train their employees to properly handle complaints of sexual assault or rape at their workplace or as related to the behavior of their contractors or employees towards their subordinates.

120. There are dozens of women who have been targeted for abuse and abused by Perez, despite the fact that Defendant knew or should have known that he was a sexual predator.

121. FedEx supervisor Courtney has received repeated complaints from women about Perez but Courtney responded to these complaints by defending Perez.

122. When one foreign-born, Hispanic woman complained to Courtney that Perez had sexually assaulted her, Courtney responded something to the effect of, "[T]here are plenty of other places to work, and there are plenty of women who are willing to work here without complaining."

**D.  Collective Action Allegations**

123.    Named Plaintiffs seek to proceed collectively on their FLSA claims on behalf of the following "Putative FLSA Class":  all current and former hourly employees who worked for Allied at any FedEx facility during the 3 years before the filing of this Complaint.

124.    Named Plaintiffs and the Putative FLSA Class Members were not given a choice to elect how they received wages; they were required to receive payment in the form a pre-paid debit card.

125.    Defendant withheld the first week or weeks of pay from Named Plaintiffs and the Putative FLSA Class members.

126.    By withholding the first week or weeks of pay from Named Plaintiffs and the Putative FLSA Class members, Defendant violated the FLSA.

127.    Defendant withheld the last week or weeks of pay from Named Plaintiffs and the Putative FLSA Class members.

128.    By withholding the last week or weeks of pay from Named Plaintiffs and the Putative FLSA Class members, Defendant violated the FLSA.

129.    Defendant withheld wages from their workers to pay their business expenses, which expenses reduced the workers' wages below the statutory minimum.

130.    Defendant paid Named Plaintiffs' and the Putative FLSA Class members' wages on prepaid debit cards.

131.    The prepaid debit cards did not permit Named Plaintiffs and the Putative FLSA Class members to withdraw all their wages without fees.

132.    By failing to pay all wages to Named Plaintiffs and the Putative FLSA Class members free and clear, Defendant violated the FLSA.

133.    Because Defendant applied the same policies that violate the FLSA to Named Plaintiffs and to the Putative FLSA Class members, the Putative FLSA Class members are similarly situated to Named Plaintiffs for purposes of the FLSA claims.

**E.    Class Action Allegations**

134.    Named Plaintiffs seek class certification on Counts II, III, IV, and V under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:  Foreign-born, Hispanic women who worked for Defendant at the FedEx Nashville and Mount Juliet facilities since May 17, 2017 ("Putative Rule 23 Class").

135.    The Putative Rule 23 Class has several members.

136.    The Putative Rule 23 Class is so numerous that joinder of all members is not practical.

137.    There are questions of law or fact common to the Putative Rule 23 Class, including without limitation (1) whether Defendant discriminated against them and/or harassed them and/or retaliated against them based on their sex, race, and national origin; (2) whether Defendant are liable for the discrimination, harassment, and retaliation; and (3) the proper measure of damages for actionable discrimination, harassment, and retaliation.

138.    The Named Plaintiffs' discrimination, harassment, and retaliation claims against Defendant are typical of those of the Putative Rule 23 Class, because they arise out of the same unlawful actions by Perez and Defendant.

139.    Defendant' defenses to Named Plaintiffs' discrimination, harassment, and retaliation claims are typical of its defenses to those of the Putative Rule 23 Class, because they arise out of the same unlawful actions by Perez and Defendant.

140.     Named Plaintiffs can fairly and adequately protect the interests of the Putative Rule 23 Class, because they are asserting the same claims as the Putative Rule 23 Class.

141.     Named Plaintiffs can fairly and adequately protect the interests of the Putative Rule 23 Class, because they have no interests adverse to the Putative Rule 23 Class.

142.     Named Plaintiffs can fairly and adequately protect the interests of the Putative Rule 23 Class, because they have retained counsel experienced in class-action employment litigation.

143.     The common questions of law and fact predominate over the variations which may exist between members of the Putative Rule 23 Class, if any.

144.     Named Plaintiffs, the members of the Putative Rule 23 Class, and Defendant all have a commonality of interest in the subject matter and remedy sought, namely compensatory damages, punitive damages, back pay, front pay, interest, costs, and attorneys' fees.

145.     If each Putative Rule 23 Class member injured or affected had to file her own lawsuit, it would necessarily result in a multiplicity of lawsuits, creating a hardship to the individuals, to this Court, and to Defendant.

146.     A class action accordingly is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Putative Rule 23 Class is entitled.

## COUNT I
## Failure to Pay Minimum and Overtime Wages
## 29 U.S.C. § 206, 207

147.     Named Plaintiffs incorporate by reference all prior allegations in this Complaint.

148.     The minimum wage provisions of the FLSA apply to Defendant.

149.     The overtime provisions of the FLSA apply to Defendant.

150.     Defendant did not pay Named Plaintiffs and the Putative FLSA Class members at

least the minimum wage for all hours worked in a timely manner.

151.     Defendant did not pay Named Plaintiffs and the Putative FLSA Class members their wages free and clear.

152.     Defendant did not pay Named Plaintiffs and the Putative FLSA Class members 1.5 times their regular rates of pay for all hours worked over 40 in a workweek.

153.     Defendant's violations of the FLSA were willful, because they knew or should have known that it was unlawful to withhold the first week or weeks and last week or weeks of pay and not to pay wages free and clear and to not pay overtime compensation to Named Plaintiffs and the Putative FLSA Class members.

154.     Defendant's violations of the FLSA caused Named Plaintiffs and the Putative FLSA Class Members damages, including back wages, liquidated damages, and attorneys' fees and costs.

## COUNT II
### Class Action Sexual Harassment
### Tenn. Code Ann. § 4-21-401(a)

155.     Named Plaintiffs incorporate by reference all prior allegations in this Complaint.

156.     Named Plaintiffs and the Putative Rule 23 Class are members of multiple protected classes.

157.     Named Plaintiffs and the Putative Rule 23 Class were subjected to unwelcome sexual harassment.

158.     The unwelcome harassment was based on Named Plaintiffs', and the Putative Rule 23 Class Members', sex.

159.     Named Plaintiffs, and the Putative Rule 23 Class, were treated differently than non-Hispanic women born in the United States by Defendant.

160. The unwelcome sexual harassment created a hostile work environment.

161. Defendant terminated the employment of Jane Doe and Jane Roe, the Putative Rule 23 Class, for refusing to submit to Perez's sexual assaults and sexual harassment.

162. Defendant are vicariously liable for the sexual assaults, sexual harassment, and discrimination.

163. The sexual harassment warrants an award of punitive damages.

164. The unwelcome sexual harassment to which Defendant subjected Named Plaintiffs, the Putative Rule 23 Class, caused them damages, including without limitation back pay, front pay, expenses, emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, loss of consortium, and attorneys' fees and costs.

## COUNT III
### Class Action Retaliation
### Tenn. Code Ann. § 4-21-401(a)

165. Named Plaintiffs incorporate by reference all prior allegations in this Complaint.

166. Named Plaintiffs, and the Putative Rule 23 Class Members, engaged in activity protected by the THRA by, among other things, refusing Perez's advances and complaining to Defendant about Perez's sexual assaults and sexual harassment.

167. Defendant was at all relevant times aware of Named Plaintiffs', and the Putative Rule 23 Class Members', THRA–protected activities.

168. After Defendant had knowledge of Named Plaintiffs', and the Putative Rule 23 Class Members', THRA–protected activities, it took adverse actions against Named Plaintiffs, and the Putative Rule 23 Class Members, including but not limited to terminating their employment and subjecting them to retaliatory harassment.

169. The retaliatory harassment altered the terms and conditions of Named Plaintiffs',

and the Putative Rule 23 Class Members', employment.

170.    Defendant's adverse actions caused Named Plaintiffs, and the Putative Rule 23 Class, damages, including without limitation, back pay, front pay, expenses, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and attorneys' fees and costs.

## COUNT IV
### Class Action National Origin Discrimination
### Tenn. Code Ann. § 4-21-401(a)

171.    Named Plaintiffs incorporate by reference all prior allegations in this Complaint.

172.    Named Planitiffs the Putative Rule 23 Class Members are all foreign nationals from Mexico, Honduras, or other Central American or South American nations.

173.    Perez and Defendant targeted and harassed Named Plaintiffs, and the Putative Rule 23 Class, because of their national origin.

174.    Perez and Defendant did not target and did not harass U.S. nationals.

175.    The harassment that Perez and Defendant inflicted on Named Plaintiffs, and the Putative Rule 23 Class, based on their national origin were adverse actions, because they altered the terms and conditions Named Plaintiffs' and the Putative Rule 23 Class Members' employment with Defendant.

176.    The national origin discrimination that Perez and Defendant inflicted on Named Plaintiffs and the Putative Rule 23 Class Members warrants an award of punitive damages.

177.    The adverse actions to which Defendant subjected Named Plaintiffs, and the Putative Rule 23 Class, caused them damages, including without limitation back pay, front pay, expenses, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and attorneys' fees and costs.

## COUNT V
## Class Action Race and Alienage Discrimination
## 42 U.S.C. § 1981

178.    Named Plaintiffs incorporate by reference all prior allegations in this Complaint.

179.    Named Plaintiffs and the Putative Rule 23 Class are members of protected racial classes, namely Hispanic and brown skin.

180.    Named Plaintiffs and the Putative Rule 23 Class are all foreign-born, non-U.S. citizens.

181.    Perez does not sexually assault or sexually harass individuals outside of the protected racial classes.

182.    Perez does not sexually assault or sexually harass individuals born in the United States or who are U.S. citizens.

183.    The sexual assaults and sexual harassment that Perez and Defendant inflicted on Named Plaintiffs and the Putative Rule 23 Class were adverse actions, because they altered the terms and conditions Named Plaintiffs' and the Putative Rule 23 Class Members' employment with Defendant.

184.    Perez's and Defendant egregious and outrageous sexual assaults inflicted on Named Plaintiffs and the Putative Rule 23 Class warrant an award of punitive damages.

185.    The adverse actions to which Defendant subjected Named Plaintiffs and the Putative Rule 23 Class caused them damages, including without limitation back pay, front pay, expenses, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and attorneys' fees and costs.

## JURY DEMAND

186.    Named Plaintiffs demand a jury trial.

# PRAYER FOR RELIEF

Based on the foregoing, Named Plaintiffs pray for the following relief from this Court:

A.     Awarding damages to Named Plaintiffs and the Putative FLSA Class Members who opt into this case for FLSA violations in the amount of their unpaid minimum and overtime wages, plus an equal amount of liquidated damages;

B.     Awarding all damages available to Named Plaintiffs and the Putative Rule 23 Class Members for the race, alienage, and national origin discrimination they suffered while working for Defendant;

C.     Awarding all damages available to Named Plaintiffs and the Putative Rule 23 Class Members for the sexual assaults, sexual harassment, and retaliation they suffered while working for Defendant;

D.     Awarding all damages available to Named Plaintiffs and the Putative Rule 23 Class Members for FedEx's negligence;

E.     Requiring Defendant to pay all attorneys' fees, costs, and expenses Named Plaintiffs, the Putative FLSA Class Members, and the Putative Assault Class Members incur to bring and to maintain this action;

F.     Requiring Defendant to pay the costs and expenses of this action;

G.     Requiring Defendant to pay pre-judgment and post-judgment interest as provided by law;

H.     Granting Plaintiffs and the Putative Class any injunctive relief to which they may be entitled;

I.     Granting Plaintiffs and the Putative Class such other, further, and general relief to which they may be entitled.

Date: May 17, 2021                        Respectfully submitted,

                                          /s/ *Charles P. Yezbak, III*
                                          Charles P. Yezbak, III (TN #18965)
                                          /s/ *N. Chase Teeples*
                                          N. Chase Teeples (TN #32400)
                                          YEZBAK LAW OFFICES PLLC
                                          2021 Richard Jones Road, Suite 310-A
                                          Nashville, TN 37215
                                          Tel.: (615) 250-2000
                                          yezbak@yezbaklaw.com
                                          teeples@yezbaklaw.com

                                          *Counsel for Plaintiffs*