IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **JANE DOE and JANE ROE, on behalf of themselves and all similarly situated employees and a class of employees,** | ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:21-cv-00395** |
| | ) | **Judge Aleta A. Trauger** |
| **FEDEX GROUND PACKAGE SYSTEM, INC. and ALLIED FACILITY CARE, LLC,** | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Before the court is the Motion to Proceed Pseudonymously, to Permit Filing Unredacted

Consent Forms Under Seal, and for Entry of Protective Order ("Motion to Proceed

Pseudonymously") (Doc. No. 25), filed by the named plaintiffs in this case, identified so far only

as Jane Doe and Jane Roe. For the reasons set forth herein, the motion will be granted as to Jane

Doe but denied as to Jane Roe.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties and Claims

The plaintiffs are individuals who reside in Davidson County, Tennessee and who currently

work, or formerly worked, for defendants Allied Facility Care, LLC ("Allied") and FedEx Ground

Package System, Inc. ("FedEx"). (Doc. No. 6 ¶¶ 12, 13, 75–76, 121.) FedEx contracts with Allied

for the performance of cleaning services at FedEx facilities in Nashville (the "Nashville facility")

and Mount Juliet, Tennessee (the "Mount Juliet facility) (collectively, the "FedEx facilities"), and

the plaintiffs worked for Allied on the premises of the FedEx facilities. (*Id.* ¶¶ 32, 38.)

The plaintiffs filed their original Complaint, naming only Allied as a defendant, on May 17, 2021; they filed their Amended Complaint (Doc. No. 6), naming both Allied and FedEx as defendants, on June 1, 2021. In the Amended Complaint, the plaintiffs assert a collective-action claim, on behalf of themselves and other similarly situated employees, against the defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207, for failure to pay overtime wages. (Doc. No. 6, at 18 (Count I).) They also bring a number of claims on behalf of themselves and a putative Rule 23 class comprised of "[f]oreign-born, Hispanic women who worked for Defendants at the FedEx . . . facilities since May 17, 2017" (*id.* at 16 ¶ 152), including claims for sexual harassment, retaliation, national origin discrimination, and race discrimination in violation of the Tennessee Human Rights Act ("THRA") and 42 U.S.C. § 1981 (Doc. No. 6 (Counts II–V). Finally, they assert a class-action negligence claim under Tennessee common law against FedEx only. (*Id.* (Count VI).) The plaintiffs filed notices of Consent to Sue under the FLSA with their original Complaint, from which their true names have been redacted. (Doc. Nos. 1-1, 1-2.)

The plaintiffs' claims under the THRA, § 1981, and Tennessee common law are premised upon allegations that they and other Hispanic female employees of the defendants suffered "egregious and outrageous sexual assault and sexual harassment and retaliation, as well as national origin discrimination," by their supervisor Samuel Perez. (Doc. No. 6 ¶ 1.) The plaintiffs allege that the defendants are liable for Perez's intentional and criminal assaults, because Perez has been employed by Allied and has supervised the cleaning staff assigned to work at the FedEx facilities since 2016; Perez was first accused of assault and offensive or provocative contact in November 2016 and charged with assault and offensive or provocative contact in September 2017; and Allied and FedEx management-level employees, including Allied manager John Ballenger, knew of these charges and knew or should have known of Perez's continuing assaults on Allied/FedEx

employees. (Doc. No. 6 ¶¶ 42–47.) Perez's employment and supervisory role over cleaning staff at FedEx facilities nonetheless continued after the 2016 criminal allegations. (*Id.* ¶ 49.) Perez was allowed to continue advertising, recruiting, interviewing, hiring, supervising, and disciplining individuals hired to perform cleaning services at the FedEx facilities. (*Id.* ¶ 50.)

Perez specifically advertised open positions in Spanish on social media, seeking Hispanic women to fill the positions. (*Id.* ¶ 51.) Applicants were instructed to appear for in-person interviews with him at the FedEx facilities, and Perez interviewed each of the named plaintiffs and similarly situated women, without supervision from Allied or FedEx representatives. (*Id.* ¶ 62.) Perez "utilizes the fears and the reticence to report of foreign-born, Hispanic women liked Named Plaintiffs to intimidate them into remaining silent about, and to groom them to accept, his sexual assaults and sexual harassment." (*Id.* ¶ 52.) "In the recruiting process and the early stages of his supervising each of the Named Plaintiffs, and other similarly situated women, Perez began to groom them to accept his sexual advances." (*Id.* ¶ 53.) He then harassed and intimidated the women he hired by, among other things, vetting them to see how badly they needed a job, repeatedly asking them to go out with him, offering to reduce their workloads if they would go out with him, threatening to increase their workloads or fire them if they would not go out with him, threatening to write them up if they did not go out with him, actually writing them up as punishment for not going out with him, and holding disciplinary write-ups and the possibility of termination over their heads to coerce them to have sex with him. (*Id.* ¶ 54.)

The plaintiffs allege generally that Perez "targets foreign-born, Hispanic women who are similarly situated to Named Plaintiffs because he believes they are more vulnerable and more easily exploitable than workers born in the United States and workers who are not Hispanic and

that they will tolerate his egregious and outrageous sexual assault, harassment, and rape without reporting it to their employers or to authorities." (*Id.* ¶ 131.)

**B.     Perez's Treatment of Doe and Roe**

The Amended Complaint alleges that, when Jane Doe was hired to work at the Mount Juliet facility in October 2019, Perez interviewed and hired her. During the interview, he asked inappropriate questions and also told her that he did not want gossipers and would write her up if he saw her talking to others. (Doc. No. 6 ¶ 78.) Shortly after she was hired, Perez issued Doe two unwarranted write-ups and told her he would not turn them in if she "obeyed his instructions." (*Id.* ¶ 87.) He also told her he was the supervisor in control and that Doe had to do as he said if she wanted to keep her job. (*Id.* ¶ 88.) He told her that, if she "accept[ed] his conditions," including that she have sex with him "whenever [he] want[ed] it," she would have permanent status. (*Id.* ¶ 89.) He told her he had control over whether she received the hourly rate promised during her interview, $12.50, or a lower rate of $10.00 per hour. (*Id.* ¶ 90.) He then sexually fondled her, and he later began repeatedly taking her to isolated areas of the Mount Juliet facility to fondle her. On at least four occasions, he took her to a nearby hotel during work hours, where he raped her and forced her to perform sexual acts against her will. (*Id.* ¶¶ 92–96.)

Perez terminated Doe's employment the first time she refused to comply with his sexual demands. (*Id.* ¶ 97.) In order to get her paycheck, Doe asked Perez for the contact information for HR. Perez refused to give her the number but offered her her job back. She went back to work. In the Spring of 2020, Doe was transferred to the Nashville facility. Sometime after June 2020, Perez raped Doe in the drivers' shower room at the Nashville facility.

Perez also hired Jane Roe to work at the Mount Juliet facility in October 2019. (*Id.* ¶ 121.) Doe and Roe knew each other and rode to work together. (*Id.* ¶ 122.) Roe alleges that Perez repeatedly asked her to go out with him and repeatedly sexually assaulted her by groping her,

repeatedly propositioned her, including by offering her money in exchange for sex, and, when she refused to accede to his demands for sex, punished her by increasing her workload and assigning her more physically demanding and less desirable jobs. (*Id.* ¶¶ 123–29.) In April 2020, he intentionally walked in on Roe while she was in the shower area and sexually assaulted her by "groping her private areas." (*Id.* ¶ 130.)

Doe and Roe eventually went together to report the false discipline and sexual harassment to FedEx Maintenance Manager Jose Yanting and to ask to whom else they should report Perez's conduct. (*Id.* ¶¶ 96, 110–11.) Doe and Roe told Yanting that many women had experienced abuse at Perez's hands. (*Id.* ¶ 112.)

On or around June 9, 2020, Doe also told Allied manager John Ballenger that Perez had raped her and that he was abusing and exploiting other women. (*Id.* ¶¶ 113, 116.) Yanting also called Allied managers Tim Davis and John Ballenger and told them he did not want Perez to remain at Allied and that these were not the first reports he had received about Perez's conduct. (*Id.* ¶ 114.) Perez was not fired; he was instead temporarily reassigned to the Nashville facility. (*Id.* ¶¶ 117–18.)

According to Doe's Declaration, Perez's actions caused her "severe emotional trauma," from which she is still suffering psychological and emotional pain. (Doc. No. 28 ¶ 4.) She takes medication daily to treat depression and PTSD, but her trauma is so severe that she has hallucinated that Perez is in the room with her during treatment sessions, and she is afraid that he may harm her again. (*Id.*) It is very difficult for her to talk about what happened, and doing so makes her feel "very bad and embarrassed." (*Id.* ¶ 5.) Her lawyers and psychologists are the only people who know the details about what happened to her. (*Id.*) She has told her partner some of what happened, but not the specifics. She is afraid that, if the details of what Perez did to her became public, it

would damage her relationship with her partner, his family, and her family. (*Id.* ¶ 6.) She wants to remain anonymous, because she does "not want to have to worry for the rest of [her] life that the people [she] meet[s] or interact[s] with know all about what happened to [her]." (*Id.* ¶ 7.) She states that, if her name came out, "it would be like going through it all over again" and that, if she cannot proceed under a pseudonym, she will "consider dropping the lawsuit due to the trauma and embarrassment that would follow [her] name being made public." (*Id.* ¶ 8.)

Jane Roe attests in her own Declaration that she was hesitant to pursue this lawsuit, because it is humiliating and embarrassing for her to have been a victim of sexual assault. She has not told many people about it, and she wants to "control who knows that [she] was sexually assaulted." (Doc. No. 29 ¶¶ 4–5.) The only people who know in detail what happened are her attorneys. Roe does not allege that she takes medication or that she has sought psychiatric treatment in connection with the sexual assaults she experienced. She simply states that she does not want her family members and her young daughter to know what happened and that it would "really upset" her for her daughter to find out. (*Id.* ¶ 6.) She states that she would be "uncomfortable" pursuing this case if she is not permitted to remain anonymous, because "it would be embarrassing" for her. (*Id.* ¶ 7.) She does not indicate that she would drop, or consider dropping, her claims if she is not allowed to proceed under a pseudonym.

### C. The Present Motion

After the defendants answered the Amended Complaint, the plaintiffs filed their present motion and supporting Memorandum of Law, seeking the court's authorization to proceed pseudonymously and the entry of a protective order. (*See* Doc. Nos. 25, 25-1, 26.) The motion is

supported by the Declarations of Jane Doe and Jane Roe.[1] The plaintiffs argue generally that they should be permitted to pursue this case under pseudonyms, because prosecution of this suit will require the disclosure of information of the "utmost intimacy"; they would be unnecessarily traumatized if required to pursue the case under their real names; and the defendants are already aware of the plaintiffs' true identities and will not be prejudiced by their pursuing their claims pseudonymously.

The defendants filed separate Responses in Opposition to the Motion (Doc. Nos. 43, 44), both raising similar arguments: (1) that the fact that the case involves sexual assault and, consequently, the "potential for embarrassment or public humiliation," standing alone, does not justify a request for anonymity (Doc. No. 43, at 3 (quoting *Ramsbottom v. Ashton*, No. 3:21-cv-00272, 2021 WL 2651188, at *4 (M.D. Tenn. June 28, 2021) (Trauger, J.)); (2) permitting the plaintiffs to proceed under pseudonyms would be "grossly prejudicial" to the defendants, particularly because the proposed Protective Order would "hinder [the defendants] from even disclosing Plaintiffs' names to any witnesses or entities in the preparation of [their] defense," from "conduct[ing] fact investigations or routine discovery without the Plaintiffs' blessing as to whether the individual or entity may be informed of the Plaintiffs' identities," and from "disclosing any 'personally identifying information, or any other sensitive information' they obtain about Plaintiffs to 'any other party or entity' absent Court order," and would require them to disclose their attorney work-product and litigation strategies (*id.* at 6); (3) there is a compelling public interest in open and transparent litigation; (4) the plaintiffs have not established compelling grounds for a "blanket protective order," particularly in light of their collective and class claims (*id.* at 7); (5) the

---

[1] The plaintiffs filed redacted Declarations and, under seal, versions of the Declarations that are supposed to be unredacted. Both the redacted and "unredacted" versions of Jane Doe's Declaration, however, are identically redacted. (Doc. Nos. 28, 30.)

additional factors identified by the plaintiffs—that the plaintiffs suffered severe emotional trauma and that the defendants are already aware of their identities—does not shift the balance of the relevant factors in favor of the plaintiffs' request for anonymity (Doc. No. 44, at 5); and (6) fairness dictates that the plaintiffs be required to disclose their identities, in light of the fact that their allegations "strike directly" at the defendants' and individual employees' reputations (*id.* at 7).[2]

The plaintiffs filed a Reply Brief (Doc. No. 47) arguing that the defendants fail to show they would suffer any concrete prejudice if the plaintiffs are allowed to proceed pseudonymously. In addition, along with their Reply, the plaintiffs submitted a revised Proposed Protective Order that, they argue, cures any possible prejudice raised in the defendants' original Responses. The revised proposed Protective Order (Doc. No. 47-1) would (1) authorize Jane Doe and Jane Roe to proceed pseudonymously in public filings, while permitting them to redact their names and personally identifying information from any documents filed publicly in the court; (2) permit them to file under seal unredacted versions of the same documents, including their consent forms, and require them to provide to the defendants unredacted copies of all documents filed under seal; (3) require the defendants to refrain from filing unredacted documents containing the plaintiffs' names or identifying information and to file under seal the unredacted version of any such documents; and (4) generally authorize both parties to disclose the plaintiffs' identities to third parties, "if

---

[2] The defendants also argue that plaintiffs' counsel has "worked to broadcast the nature of the lawsuit in the news," making the plaintiff's argument against disclosing their identities "disingenuous." (Doc. No. 43, at 5.) In response, the plaintiffs' lead counsel, Charles Yezbak, submitted a Declaration explaining that he was contacted by reporter Anita Wadhwani with the *Tennessee Lookout* via email after the lawsuit was filed; he did not initiate contact with her. (Doc. No. 48 ¶ 3.) He did not supply the plaintiffs' names and would not have supplied them, even if the reporter had asked. He spoke with Wadhwani on the telephone briefly; later, the reporter emailed him a copy of FedEx's statement about the suit, and he prepared a brief written statement in response, which he emailed to the reporter. (*Id.* ¶¶ 5–6.) Neither Yezbak nor any attorney at his firm has contacted the media about the case. (*Id.* ¶ 8.) Based on this Declaration, the court cannot find that plaintiffs' counsel has "worked to broadcast" information about this lawsuit.

counsel for the parties believe in good faith that disclosure of the identities of Plaintiffs to third parties, including other entities, is necessary during discovery to investigate Plaintiffs' claims and Defendants' defenses and to fulfill their discovery obligations," so long as the third party is apprised of the provisions of the Protective Order. (Doc. No. 47-1 ¶ 8.) The revised proposed Protective Order requires either party to notify the other party of a disclosure of protected information to third parties, unless doing so will "reveal attorney work product." (*Id.*)

Second, the plaintiffs argue that they seek to protect themselves from the "secondary trauma of having their names publicly identified with the rapes and sexual assaults they suffered" and that this is different from merely trying to avoid "re-triggering the symptoms of trauma that would be an inherent risk" of pursuing this litigation. (*Id.* at 1–2.) In support of this argument, the plaintiffs submit the Declaration of Emily B. Simpson, Clinical Co-Director of the Sexual Assault Center of Nashville. Third, the plaintiffs argue that this case is distinguishable from those involving well known public figures, as were involved in *Ramsbottom* and *Rapp v. Fowler*, No. 20-CV-9586 (LAK), 2021 WL 1738349 (S.D.N.Y. May 3, 2021), an opinion on which this court relied significantly in reaching its conclusion in *Ramsbottom* to deny the plaintiff's motion to proceed under a pseudonym.

FedEx filed a Sur-Reply (Doc. No. 52), in which Allied joined (Doc. No. 53), arguing that the court should disregard new evidence submitted with the plaintiffs' Reply, including the Simpson Declaration, particularly in light of the fact that Simpson did not meet or treat the plaintiffs.

## II. STANDARD OF REVIEW

The "general rule [is] that a complaint *must* state the names of the parties." *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636 (6th Cir. 2005) (citing Fed. R. Civ. P. 10(a)); *see also Smith v. S.E.C.*, 129 F.3d 356, 359 n.1 (6th Cir. 1997) (noting the "strong presumption that

court files will be open to the public"). This rule has "constitutional overtones," as a plaintiff's use of a pseudonym "runs afoul of the public's common law right of access to judicial proceedings, a right that is supported by the First Amendment . . . ." *Doe v. Del Rio*, 241 F.R.D. 154, 156 (S.D.N.Y. 2006) (quoting *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000)) (internal quotation marks omitted); *see also Doe v Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F3d 1036, 1042 (9th Cir. 2010) ("The normal presumption . . . that parties must use their real names . . . is loosely related to the public's right to open courts and the right of private individuals to confront their accusers." (internal citations omitted)).

In *Doe v. Porter*, 370 F.3d 558 (6th Cir. 2004), the Sixth Circuit identified a non-exhaustive list of factors (to which the parties refer as the "*Porter* factors") that courts may consider in determining whether "special circumstances" exist to justify an exception to the rule, including:

> (1) whether the plaintiffs seeking anonymity are suing to challenge governmental activity; (2) whether prosecution of the suit will compel the plaintiffs to disclose information of the utmost intimacy; (3) whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and (4) whether the plaintiffs are children.

*Id.* at 560 (citing *Doe v. Stegall*, 653 F.2d 180, 185–86 (5th Cir. 1981) (internal quotation marks omitted)). The court may exercise its discretion to consider other factors that may be relevant in a particular case, keeping in mind that the applicable standard is whether "a plaintiff's privacy interests *substantially outweigh* the presumption of open judicial proceedings." *Id.* (emphasis added). Other factors that may be considered include whether the plaintiff would risk suffering injury if identified and whether the defendant would be prejudiced by the plaintiff's proceeding anonymously. *See, e.g.*, *Plaintiff v. Wayne State Univ.*, No. 20-CV-11718, 2021 WL 243155, at *7 (E.D. Mich. Jan. 29, 2021); *Doe v. City of Detroit*, No. 18-cv-11295, 2018 WL 3434345, at *1 (E.D. Mich. Jul. 17, 2018).

### III.    DISCUSSION

#### A.    The "*Porter*" Factors

The plaintiffs here do not challenge governmental activity; the litigation will not compel them to disclose an intention to violate the law, nor is there any suggestion that the plaintiffs are in this country illegally; and neither plaintiff is a minor. These three *Porter* factors, therefore, weigh in favor of requiring the plaintiffs to proceed under their real names.

The remaining *Porter* factor is whether prosecution of the suit will compel the plaintiffs to disclose information of the "utmost intimacy." *Porter*, 370 F.3d at 560. Courts have generally recognized that matters of rape and sexual assault involve "highly sensitive and personal subjects." *Doe v. Cabrera*, 307 F.R.D. 1, 5 (D.D.C. 2014) (collecting cases containing allegations of sexual assault in which the plaintiffs were allowed to proceed under a pseudonym). At the same time, however, as this court has already held, "the potential for embarrassment or public humiliation does not, without more, justify a request for anonymity." *Ramsbottom*, 2021 WL 2651188, at *4 (quoting *Doe v. McLellan*, No. CV 20-5997 (GRB) (AYS), 2020 WL 7321377, at *1 (E.D.N.Y. Dec. 10, 2020)); *see also Doe v. Weinstein*, 484 F. Supp. 3d 90, 94 (S.D.N.Y. 2020) (recognizing that "allegations of sexual assault, by themselves, are not sufficient to entitle a plaintiff to proceed under a pseudonym" (collecting cases)).

#### B.    Other Factors

##### 1.    *Prejudice to the Defendants' Right to Mount a Defense*

Courts considering this factor have examined "difficulties in conducting discovery," the "reputational damage to defendants," and the "fundamental fairness of proceeding anonymously," among other considerations. *Rapp v. Fowler*, No. 20-CV-9586 (LAK), 2021 WL 1738349, at *6

(S.D.N.Y. May 3, 2021) (citations omitted).[3] In *Ramsbottom*, this court noted that "concealing the name of a party could deprive a litigant and the court of the chance that a yet unknown witness would, upon learning that fact about the case, know to step forward with valuable information about the events or the credibility of witnesses." *Ramsbottom*, 2012 WL 2651188, at *5 (quoting *Doe v. Del Rio*, 241 F.R.D. 154, 159 (S.D.N.Y. 2006)); *see also Roe v. Does 1-11*, No. 20-CV-3788-MKB-SJB, 2020 WL 6152174, at *3 (E.D.N.Y. Oct. 14, 2020) ("Allowing a plaintiff to proceed anonymously may also hamper witnesses coming forward of their own volition to either bolster or refute a plaintiff's allegations.").

In *Ramsbottom*, as in *Rapp*, however, the defendants were public figures, and the possibility of unknown witnesses coming forward was not insignificant. In this case, the defendants have not indicated that any potential witnesses exist whose identity is unknown to them. Moreover, the events giving rise to the plaintiffs' claims in this case all occurred during the last two years, making the situation here very different from that in *Ramsbottom* and *Rapp*, which not only involved celebrity defendants, but also involved events that were remote in time, so that there was a real potential for unknown and unidentified witnesses to come forward that might have been hampered if the plaintiffs had proceeded under pseudonyms. These concerns are simply not at issue here.

In addition, the plaintiffs' revised proposed Protective Order appears to address all of the defendants' concerns about prejudice, as it specifically makes the confidentiality obligations apply equally to both parties and would not preclude the parties' counsel from disclosing the plaintiffs'

---

[3] In *Rapp*, one plaintiff was identified by name and a second sought to proceed anonymously, in a suit alleging that defendant Kevin Spacey Fowler, better known as Kevin Spacey, sexually assaulted them decades ago, when Spacey was in his twenties and the plaintiffs were teenagers. *Rapp*, 2021 WL 1738349, at *1.

names to third parties during discovery, as long as counsel believes in good faith that such disclosure is necessary, and the third party to whom the disclosure is made is also informed of the terms of the Protective Order. (Doc. No. 47-1 ¶ 8.) And the parties would not have an obligation to notify the other party about such disclosures if it would require them to disclose attorney work-product. (Doc. No. 43, at 6.)

The defendants' concerns about their reputations, while not insubstantial, does not shift the weight of this factor in their favor. In particular, the court notes that the defendants are business entities rather than individuals. Moreover, whatever damage this lawsuit may cause their reputations will be the same, irrespective of whether the plaintiffs are permitted to proceed anonymously.

In sum, the court finds that the defendants' concerns about prejudice during discovery and other phases of this litigation appear to be speculative at best. The court finds that allowing Jane Doe and Jane Roe to proceed anonymously would not prejudice the defendants, at least during the early stages of this litigation, including through discovery and potential settlement discussions.

### 2. The Risk of Psychological and Other Harm to the Plaintiffs

With regard to this factor, the court notes that Jane Doe and Jane Roe appear to be in significantly different situations. Jane Roe does not indicate that she has suffered serious trauma or sought psychiatric care as a result of the alleged sexual assault by Perez. She states only that she is humiliated and embarrassed about having been a victim of sexual assault and wants to "control" who knows about the assault. (Doc. No. 29 ¶¶ 4–5.) She states that it would be upsetting for her if her young daughter found out what happened and that she would be "uncomfortable" pursuing the case in her true name. (*Id.* ¶¶ 6–7.)

The court finds that Roe's Declaration falls short of establishing that requiring her to pursue this lawsuit in her own name would cause—or exacerbate—psychological trauma of the kind that

has prompted courts in other cases to permit litigants to proceed pseudonymously. *See, e.g.*, *Doe v. Cabrera*, 307 F.R.D. 1, 6 (D.D.C. 2014) (permitting the plaintiff to proceed anonymously at least through discovery, where she had allegedly been the victim of a brutal, violent rape and alleged that she had experienced "severe anxiety and depression as a result of the assault," that she had contemplated suicide following the assault, and that she had made "significant progress in [her] treatment from the assault" but was not sure she could proceed with the lawsuit if forced to proceed under her own name, and the court found that not allowing the plaintiff to proceed under a pseudonym risked "undermining the psychological treatment the plaintiff has already undergone since the alleged incident"; *Doe v. Smith*, 105 F. Supp. 2d 40, 43–44 (E.D.N.Y. 1999) (permitting the plaintiff to proceed under a pseudonym where she submitted medical evidence establishing that she had been diagnosed with dissociative identity disorder and opining that public disclosure of her name during the course of litigation would cause her to "decompensate [psychologically] to a point at which she could not . . . pursue the current legal process and would suffer severe risk to her safety and to her survival." (alterations in original)).

Generally, courts have found that a plaintiff's allegations that proceeding publicly would cause embarrassment and humiliation, standing alone, are not sufficient to justify permitting a plaintiff to proceed under a pseudonym. *Id.* at 44 (collecting cases). Plaintiff Jane Doe, however, does allege that she suffered, not simply sexual assault in the form of groping, but actual rape on a repeated basis, and she claims that she has suffered "severe emotional trauma" as a result, for which she has undergone and continues to undergo psychiatric treatment and to take medication for depression and PTSD. (Doc. No. 29 ¶ 4.) She indicates that having her name appear publicly in court filings and news stories, specifically, would cause her to worry for the rest of her life if the people she meets know about her history, causing her to continuously relive the shame and

trauma of the events. (*Id.* ¶ 7.) Doe also states that she is "very fearful of being exposed publicly" and will consider dropping the lawsuit if not permitted to proceed pseudonymously. (*Id.* ¶ 8.) Although Doe has not submitted actual evidence regarding her medical treatment from her practitioners, the court finds that her own testimony regarding her symptoms and treatment is sufficient at this juncture. In addition, Doe attests that she has not shared with her partner all of what she alleges Perez did to her, for fear of damaging her relationship with her partner, as well as her relationships with his family and her own. This is a much more significant factor than simply a generalized fear of embarrassment.

Further, the plaintiffs, in responding to the defendants' arguments in their Responses in opposition to the Motion to Proceed Pseudonymously, have submitted the Declaration of Emily B. Simpson, in her role as Clinical Co-Director of, and a Licensed Clinical Therapist at, the Sexual Assault Center located in Nashville. Although Simpson never personally treated either plaintiff, she avers that she has many years of experience working as a counselor for victims of sexual trauma and has treated "hundreds of clients who were survivors of sexual assault." (Doc. No. 49 ¶ 8.) As relevant here, she attests as follows:

> 8. The statements Jane Doe [makes in her] declaration[] about wanting to be the one[] to determine who knows about the rape and sexual assaults [she] suffered are consistent with the experiences of sexual assault survivors I have treated.
>
> 9. As I . . . observed during my years of professional experience . . . , a foundation of the healing process . . . for sexual assault survivors is establishing "felt safety," or the subjective degree of safety one feels. A major component of helping survivors and victims to establish felt safety is helping them to regain control and ownership over the story of what happened to them. One very important part of regaining ownership and control is for the victim to determine with whom she shares her story.
>
> 10. Sexual assault victims often experience primary trauma from the initial assault and additional, secondary trauma from what happens after the assault, such as reporting to the police or filing a lawsuit. Secondary trauma is one reason why

many sexual assault victims either never report what happened to them or delay in reporting their assaults.

> 11. In my professional experience and based on my professional training, however, there is a difference between what therapists call "natural impact," or participating in the legal process by re-telling what happened, on the one hand, and secondary trauma associated with the victim losing control of the process or caused by being named publicly, on the other hand. Although victims will experience some level of natural impact by re-telling the experience in legal proceedings, this can often be part of the healing process if the client chooses to pursue it in her own way. Secondary trauma is worse when patients lose control over their story or when they are named publicly, particularly where they are concerned about people knowing that they were sexual assault victims. If the victim is identified publicly, then she . . . often worries that everyone she encounters knows about or is talking about what happened to her, even if they are not. This is especially true when the victim encounters new groups or applies for a new job; the uncertainty of whether others know about the history of sexual assault affects the interactions the victim has with others. Such secondary trauma will negatively affect the victim's mental health and set back her recovery. This should be avoided if possible.

> 12. From a clinical perspective, the secondary trauma described above is distinct from the natural impact a sexual assault survivor experiences due to re-telling the event as part of treatment or because she is participating in the legal process. The secondary trauma I am describing is related specifically to the victim's general feelings of safety and her interactions with others moving forward, not having to revisit the initial assault by talking about what happened.

(Doc. No. 49 ¶¶ 8–12.) Simpson's testimony serves to draw a distinction between the trauma that Jane Doe suffered as a direct result of the (alleged) sexual assault and rape and the secondary trauma she would likely suffer, not as a result of bringing the lawsuit *per se*, but as a result of having to pursue her claims publicly under her own name.

The court finds that the evidence presented is sufficient to establish that Jane Doe suffered significant trauma from the alleged sexual assaults and rape and that requiring her to pursue this lawsuit in her own name would have a substantial likelihood of causing secondary trauma of the type described by Simpson and of irreparably harming her relationships with her partner and family members. Moreover, contrary to the defendants' assertions, the evidence presented is neither speculative or impermissibly conclusory.

This factor weighs strongly in favor of permitting Doe to proceed pseudonymously, but it does not weigh strongly in favor of permitting Roe to proceed pseudonymously.

> ### 3. Fundamental Fairness and the Public's Interest in Open Access to Proceedings

Jane Roe attests in her Declaration as to her conviction that it would be "unfair" to require her to disclose her name "just to try to pursue justice." (Doc. No. 29 ¶ 7.) To the contrary, the "normal presumption" is that a plaintiff must pursue a lawsuit in her own name, *see Kamehameha Schs.*, 596 F3d at 1042, and this rule bears out in the vast majority of, for example, Title VII lawsuits in which plaintiffs contend that they suffered sexual harassment and discrimination in the employment context. Deviation from this rule requires a strong showing of "exceptional circumstances." *See, e.g.*, *Doe v. Smith*, 105 F. Supp. 2d at 44 ("[T]he presumption of openness in judicial proceedings can be overridden in exceptional circumstances."). The defendants, for their part, argue that fairness dictates that the plaintiffs be required to disclose their identities, since their allegations impact the defendants' (and certain individual employees') reputations. (Doc. No. 44, at 7.)

This factor is not one requiring special consideration. Rather, as the court in *Smith* noted, there is a strong presumption in favor of open proceedings, and the question before the court is whether the plaintiffs have established the existence of special circumstances that warrant overriding that presumption in favor of allowing them to proceed pseudonymously. *See Signature Mgmt. Team, LLC v. Doe*, 323 F. Supp. 3d 954, 957 (E.D. Mich. 2018) ("The public has a right to know who the parties are in almost every case before a federal district court as a matter of 'public confidence in and understanding of the judicial system.'" (quoting *Signature Mgmt. Team, LLC v. Doe*, 876 F.3d 831, 838 (6th Cir. 2017))).

### C.     Weighing the Factors

The fact that the allegations in this case are of a highly personal nature, involving matters of utmost intimacy, weighs in favor of both plaintiffs' anonymity, but the remaining *Porter* factors do not. Specifically regarding Jane Roe, even if the court also presumes that the risk of psychological trauma if she is required to proceed under her real name weighs slightly in her favor, these two factors together, under the particular circumstances of this case, do not "substantially outweigh the presumption of open judicial proceedings." *Porter*, 370 F.3d at 560. Roe does have the option, however, of seeking to seal or redact specific court filings that contain particularly embarrassing or intimate information.

Regarding Jane Doe, the allegations of sexual assault and rape by Perez are more severe, and the plaintiff has submitted evidence that she has been severely traumatized and would be further traumatized, not simply by pursuing litigation, but by having her name associated publicly with this case. While the other *Porter* factors do not weigh in favor of granting the motion, neither have the defendants established that they would be prejudiced in conducting discovery in this matter, or otherwise, if Jane Doe is allowed to proceed under a pseudonym. In addition, they are already aware of Jane Doe's identity. The court finds that the substantial risk of trauma to Jane Doe and the likelihood of setting back whatever mental health progress she has already made in recovering from the alleged trauma, coupled with the potential risk of irreparable harm to her relationships, substantially outweigh the presumption of open proceedings, at least at this juncture. Jane Doe will be permitted to proceed anonymously.

## IV.     CONCLUSION AND ORDER

Having found that plaintiff Jane Doe should be permitted to proceed pseudonymously, the court hereby **GRANTS IN PART AND DENIES IN PART** the plaintiffs' Motion to Proceed Pseudonymously, to Permit Filing Unredacted Consent Forms Under Seal, and for Entry of

Protective Order (Doc. No. 25). Within **TEN DAYS** of entry of this Memorandum and Order, the plaintiff **SHALL** prepare a revised Protective Order narrowing its application to Jane Doe rather than pertaining to both named plaintiffs; plaintiff Jane Doe **SHALL** file an unredacted Notice of Consent under seal; and Plaintiff Jane Roe **MUST** submit an unredacted Notice of Consent. The Clerk **SHALL**, thereafter, update the case caption.

The court emphasizes that this ruling is preliminary in nature and does not address or resolve the question of whether Jane Doe will be permitted to proceed under a pseudonym during trial if this case proceeds to trial—an issue the parties' motion and responses do not raise. This ruling, therefore, is without prejudice to the defendants' ability to move to require Jane Doe to proceed under her own name if changed circumstances or progression in the procedural status of the lawsuit so warrant.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge